In re EVANS PRODUCTS CO., et
al., Debtors.

Bankruptcy No. 85–00512–BKC–TCB.

United States Bankruptcy Court,
S.D. Florida.

July 10, 1987.

See also, Bkrtcy. 69 B.R. 68.

Timothy Norris, Weil, Gotshal & Manges, Miami, Fla., for debtor.

Robert L. Tamietti, Murphy, Weir & Butler, San Francisco, Cal., for Bank of America.

Francis L. Carter, Steel, Hector & Davis, Miami, Fla. for Unsecured Creditors' Committees of Evans Products Co. and Evans Financial Corp.

## ORDER ON OBJECTION TO PRULEASE'S AMENDED PROOF OF CLAIM

THOMAS C. BRITTON, Chief Judge.

Prulease, as lessor of some 700 vehicles to the debtor, Evans, under leases which date back to 1974 has filed its claim of over $2 million in these chapter 11 bankruptcy cases. By the provisions of the confirmed plan, this claim is now asserted against Asset Holding Company, the liquidating trust. It is estimated that the assets will permit payment of between 20–25% of the outstanding claims. Prulease and the liquidating trust have reached agreement with respect to the claim in all respects except Prulease's claim for reimbursement of its legal expense incurred in the enforcement of the leases. The application was heard July 2.

Prulease's counsel, a large and completely qualified New York law firm, has charged and received $214,138 for its legal services for 1,684 hours together with $24,356 expenses, a total of $238,494.

The leases stipulate that Prulease may recover as part of its claim its reasonable expenses for the enforcement of the leases. This is, therefore, a purely contractual claim governed by State law which has no reference to the statutory provisions under Title 11 for the recovery of fees.

The liquidating trust does not question that the time was spent nor does it question the reasonableness of the hourly charges upon which this claim is based (an average of $127 per hour, including some 217 hours of paralegal time). The average hourly charges for the 16 attorneys range from $85 to $308 and average $139. The paralegals are billed at an average of $47 per hour.

■ The trust does dispute the reasonableness of the *amount of time* spent in the enforcement of these leases. Objector argues that reasonable compensation for these services would be $122,000. It has reached this estimate by trebling the time spent by debtor's Miami and New York counsel in defending the enforcement of these leases (320 hours) at the $127 average hourly charge made by the firm.

The services in question were provided over a two-year period between March 18, 1985 and February 28, 1987. They all occurred after the debtor had filed its chapter 11 bankruptcy on March 11, 1985. The debtor was then in default on these leases.

By statute, claimant was entitled to seek stay relief from this court in order to enforce immediately the terms of its leases and it was entitled to seek administrative rent or some other form of adequate protection. It did nothing for 16 days. On April 3, 1985 it filed an adversary complaint requesting the relief to which it was entitled. That adversary complaint was given a prompt trial date of May 1, 1985, as is contemplated by the Code. On the trial date, claimant was not prepared to proceed and requested a continuance. The complaint was dismissed without prejudice to a new filing if and when claimant was ready to proceed on the relief it requested. The complaint was never refiled.

On December 12, 1985, the leases were rejected by the debtor as burdensome under § 365(d)(2). Claimant took no action in this court between May 1, 1985 and January 1986 when it applied a second time to this court for relief. At the hearing on that motion, claimant announced a stipulated agreement with the debtor, that the debtor either return or purchase the equipment and pay administrative rent. The stipulation was approved by this court on January 6, 1986 (nine months after counsel had been engaged to enforce the leases).

Claimant spent the next five months in negotiation with representatives of the debtor for the purchase by the debtor of part of the equipment and payment of administrative rent. During this five months (January to July 1986) considerable time was spent in the drafting and review of documents necessary to transfer title to hundreds of vehicles. The resulting stipulated purchase agreement was approved by this court on July 31, 1986.

Claimant spent the next seven months in unavailing efforts to consummate the foregoing negotiated settlement and did not

finally obtain satisfaction until very recently when its claim was resolved by other creditors who, in the meantime, had presented a reorganization plan which was confirmed by this court.

Claimant blames the debtor and debtor's counsel for its extraordinary delay in the enforcement of its leases. I am sure that the debtor and its counsel took full advantage of claimant's willingness to continue negotiation with a party that had repeatedly demonstrated its unwillingness or inability to perform any commitment it made, but I am astounded at claimant's gullibility, in light of the prompt hearings available to claimant in this court and the summary remedies available to it under Title 11.

During this two-year period, claimant's counsel made only three applications to this court. It was unprepared to proceed on its first application when it was granted a prompt hearing. On each of its other two appearances, it elected to accept a settlement which the debtor subsequently failed to perform. Because I am, of course, familiar with the relief sought by and accorded to other similar creditors confronted with this debtor, I know that had this claimant been prepared to and willing to proceed at the time of its first resort to this court, it would have received full satisfaction then. I have been unable to determine from claimant's counsel whether counsel or the client insisted on the continued effort to settle the dispute, notwithstanding the debtor's repeated defaults.

I cannot, therefore, disagree with the objector's contention that the time spent in the enforcement of these leases was unreasonable. It matters not whether the poor judgment exercised was that of counsel or the client. In either event, the distribution of limited assets to the remaining creditors ought not to be reduced by an excessive allowance of this claim.

■ It is apparent from claimant's presentation that much if not most of its attorneys' time was spent in attempting to negotiate the purchase of some or all of the leased equipment and in preparing the documents necessary to accomplish a sale. These services, though desired by Prulease and possibly of value to Prulease, were not necessary to the enforcement of the leases. They were an alternative to enforcement. Upon the termination of every lease, the lessor must incur the expense of either leasing to another or selling the property. That inevitable expense is or should be included within the rental charge. To allow it here as an enforcement expense would permit a double recovery.

■ For the foregoing reason and because the enforcement of these leases could have been accomplished in this court on June 1, 1985 (two-and-a-half months after counsel were employed) or very soon thereafter, I find that the reasonable time spent in the enforcement of these leases was a fraction of the 960 hours proposed by counsel for the liquidating trust. I cannot believe that it would require more than 100 hours of attorney time, assuming reasonable competence, to enforce promptly the remedies available to Prulease under Title 11 before this court. At this firm's average hourly rate of $139, that represents a reasonable expense of $13,900 for such services.

■ Turning to the requested reimbursement of expenses, I find that the reasonable expenses total $6,984. I have rejected the claim for reimbursement of "duplicating, stenographic overtime and related charges, Lexis, local transportation, telecopier, and miscellaneous expenses", because I have considered these expenses as a part of the customary overhead cost of a law firm these days and have, therefore, considered this cost in the evaluation of the hourly charges made by the firm.

Prulease's claim as previously negotiated between the parties should, therefore, be increased by a total of $20,884.